Argued and submitted May 17, affirmed August 14, petition for review denied
November 27, 2013 (354 Or 490)

In the Matter of E. L. N.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. A. N.,
*Appellant.*

Marion County Circuit Court J110701;
Petition Numbers 112111NYE1, 082812NYE1;
A153296

308 P3d 303

Kimberlee Petrie Volm, Deputy Public Defender, argued
the cause for appellant. With her on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Karla A. Ferrall, Assistant Attorney General, argued the
cause for respondent. With her on the brief were Ellen F.
Rosenblum, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Schuman, Presiding Judge, and Wollheim, Judge,
and Duncan, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

In this juvenile dependency case, father appeals from a judgment of the juvenile court changing the permanency plan for his daughter E from reunification to adoption. We conclude that the juvenile court did not err and affirm.

The parties do not ask for *de novo* review, and we conclude that this is not an exceptional case that warrants exercise of our discretion to review *de novo*. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review of certain equitable actions); ORAP 5.40(8)(c) (the court will exercise discretion to try the cause anew on the record only in exceptional cases). Accordingly, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Dept. of Human Services v. N. P.*, 257 Or App 633, 307 P3d 444 (2013).

E was born on August 12, 2011. The Department of Human Services (DHS) removed E from mother's care in November 2011 and asserted jurisdiction over E on January 4, 2012, based on mother's substance abuse. On May 16, 2012, based partly on mother's decision to allow E to remain with her current caretakers and be adopted, the juvenile court changed the permanency plan for E from reunification to adoption.

Shortly before E's birth, father began serving a 23-month prison term for drug crimes and for providing false information to police. As of May 2012, father had not been identified as E's father, but he notified DHS that he believed that he was E's father.

In August 2012, father's paternity was established. On September 26, 2012, father stipulated to allegations of a jurisdictional petition that he was incarcerated and unable to be a custodial resource for E. On November 1, 2012, the juvenile court determined as a stipulated additional ground for jurisdiction that father's substance abuse impairs his judgment and interferes with his ability to safely parent E.

In the months between father beginning his incarceration and when paternity was established, father had been disciplined six times in prison. Soon after his paternity was established, father entered into an action agreement with DHS in which he agreed to engage in any remedial services available while he was in prison, to comply with prison conduct requirements, and to maintain contact with DHS. Father participated in Narcotics Anonymous meetings and took a certification course to become a flagger, but due to the brevity of his remaining prison term, he was not able to enroll in parenting or drug treatment programs.

On November 27, 2012, the juvenile court held a hearing on DHS's motion to change E's permanency plan from reunification to adoption.[1] Father opposed the motion, arguing that his progress had been sufficient, that his projected release date from prison was March 6, 2013, and that a compelling reason, therefore, existed to defer changing the plan to adoption. Father estimated that, realistically, it would take him four to six months after his March 2013 release to prepare to care for E and that he would not be available to care for her until July 2013, when E would be almost two years old.

Because this case involves a question of statutory interpretation and whether the juvenile court's judgment complied with the pertinent statutes, we digress for a moment to describe the relevant statutory provisions that governed the juvenile court's decision. ORS 419B.476 describes the findings and determinations that the juvenile court must and may make at the permanency hearing and in a permanency judgment, depending on the facts in play and permanency plan in place at the time of the hearing. ORS 419B.476(2) through (4) describe the findings and determinations that the court must and may make *at the permanency hearing*. Under ORS 419B.476(2)(a),[2] when, as here,

---

[1] Although on May 16, 2012, mother had stipulated to the plan of adoption, the juvenile court determined that, because father had not yet been identified as E's parent, the permanency plan at the time of the November hearing was reunification, and the court conducted the hearing in accordance with ORS 419B.476(2)(a).

[2] ORS 419B.476(2)(a) provides:

"If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable

the permanency plan in place at the time of the hearing is to reunify the family, the court is required to make findings at the permanency hearing as to whether DHS has made reasonable efforts to reunify the family and as to whether the parent has made sufficient progress to allow the child to be returned home safely. In making its determination, the court must consider the child's health and safety to be the paramount concerns. *Id.*

ORS 419B.476(5) describes the contents of the order that the juvenile court must issue within 20 days of the permanency hearing. The order must include all of the findings and determinations that the court makes at the hearing pursuant to ORS 419B.476(2) through (4). ORS 419B.476(5) (a). Also, under ORS 419B.476(5)(b), the court's order is required to include the court's determination as to the permanency plan that will be in place for the child, including:

"whether and, if applicable, when:

"(A)   The ward will be returned to the parent;

"(B)   The ward will be placed for adoption, and a petition for termination of parental rights will be filed;

"(C)   The ward will be referred for establishment of legal guardianship; or

"(D)   The ward will be placed in another planned permanent living arrangement[.]"

ORS 419B.476(5)(b).

Additionally, ORS 419B.476(5)(c) to (i) describe the determinations, pertaining to specific types of permanency plans, that the juvenile court must include in its order. For example:

"(c)   If the court determines that the permanency plan for the ward should be to return home because further efforts will make it possible for the ward to safely return home within a reasonable time, *the court's determination of the services in which the parents are required to participate,*

---

efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

*the progress the parents are required to make and the period of time within which the specified progress must be made*;

"(d)   If the court determines that the permanency plan for the ward should be adoption, *the court's determination of whether one of the circumstances in ORS 419B.498(2) is applicable*[.]"

(Emphasis added.)

When, as here, the court determines under ORS 419B.476(5)(b)(B) "that the ward will be placed for adoption, and a petition for termination of parental rights filed," ORS 419.476(5)(d) requires that the permanency order also include "the court's determination of whether one of the circumstances in ORS 419B.498(2) is applicable."

ORS 419B.498 provides, in turn:

"(2)   The department shall file a petition *to terminate* the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"(a)   The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b)   There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A)   The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c);

"(B)   Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships; or

"(C)   The court or local citizen review board in a prior hearing or review determined that while the case plan was to reunify the family the department did not make reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the child or ward to safely return home; or

"(c)   The department has not provided to the family of the child or ward, consistent with the time period in the case plan, such services as the department deems necessary for the child or ward to safely return home, if reasonable efforts to make it possible for the child or ward to safely return home are required to be made with respect to the child or ward.

"(3)   No petition to terminate the parental rights of a child or ward's parents pursuant to subsection (1) of this section or pursuant to ORS 419B.500, 419B.502, 419B.504, 419B.506 or 419B.508 may be filed until the court has determined that the permanency plan for the child or ward should be adoption after a permanency hearing pursuant to ORS 419B.476."

(Emphasis added.)

We now describe the juvenile court's determinations. At the hearing on November 27, 2012, the juvenile court determined that DHS's efforts to implement the plan had been reasonable, and that determination is not disputed on appeal. In addressing whether father had made sufficient progress under ORS 419B.476(2), the court stated that it believed that father had the intention to meet his obligations under the action agreement, and the court recognized that father's incarceration had limited his ability to meet those obligations. However, due to the brevity of his remaining prison term, father could not access certain services—such as parenting classes and substances abuse treatment—that would be necessary to his ability to parent E. Therefore, father would have to wait until his release to undergo an evaluation, address his parenting skills and substance abuse issues, and to complete the action agreement, in addition to finding housing and employment. At the earliest, the juvenile court found, reunification would be at least nine months from the November 2012 hearing. Thus, at a minimum, E would be in foster care for a total of 21 months. In the juvenile court's view, that was too long for the child to wait. In light of that, the juvenile court concluded that father had not made sufficient progress to allow E to be placed with him.

On appeal, father asserts that the trial court erred in ruling that he had failed to make sufficient progress toward ameliorating the deficiencies identified in the jurisdictional petition—incarceration and substance abuse. In father's view, this case is similar to *State ex rel Juv. Dept. v. C. D. J.*, 229 Or App 160, 166, 211 P3d 289 (2009), in which we held, on *de novo* review, that, given that father's incarceration and the minimal requirements that had been placed on him during the short time between the jurisdictional judgment and the permanency hearing, that father had made sufficient progress.

Although, as the juvenile court determined, and as was the case in *C. D. J.*, father's incarceration made it difficult for him to satisfy his obligations under the action agreement, the delay here of nine months, caused by father's inability to access services during his incarceration, was considerably longer than that involved in *C. D. J.*, and resulted in a much longer period of foster care for E than was the case with the child in *C. D. J.* The juvenile court determined that that delay was at least partially attributable to father's disciplinary record in prison and that the delay was excessive. We agree with DHS that the juvenile court's findings are supported by evidence in the record.

But father asserts that DHS was also required to show, and the juvenile court was required to find, that E could not be returned to him *within a reasonable time*. That requirement, father contends, is in addition to the statutorily mandated determination that father's progress has been insufficient, and is a prerequisite to changing the child's permanency plan from reunification to adoption, under both ORS 419B.476 and ORS 419B.498(2)(b)(A). Father does not explicitly contend that the juvenile court made no finding on that issue; he contends only that DHS has not satisfied its burden to show that father would *not* be ready to parent E within a reasonable time. The state replies that under our recent opinion in *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 284 P3d 1233, *disposition modified on recons*, 253 Or App 600, 292 P3d 565 (2012), there is no statutory requirement of a finding that a parent cannot be reunited with the child within a reasonable time before the court changes the plan from reunification to adoption. Because we

conclude that the juvenile court's findings implicitly include a determination that a minimum of an additional nine months from the date of the permanency hearing was not a reasonable time, and that that determination is supported by legally sufficient evidence, we affirm on that ground, and do not reach DHS's contention that it was not necessary for the juvenile court to make the "reasonable time" determination.

Affirmed.