Submitted October 1, affirmed December 4, 2019

In the Matter of L. L. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. M. D.,
*Appellant.*

Multnomah County Circuit Court
17JU06042;
Petition Number 112531;
A170969 (Control)

In the Matter of D. D., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. M. D.,
*Appellant.*

Multnomah County Circuit Court
17JU06043;
Petition Number 112531;
A170975

454 P3d 838

Father appeals from judgments changing the permanency plan for his two children from reunification to adoption. He assigns error to the juvenile court's conclusion that the Department of Human Services (DHS) made reasonable efforts to reunify him with his children. Father specifically argues that DHS's efforts were unreasonable because it delayed referring father to batterer's intervention treatment for nearly seven months after the juvenile court ordered DHS to do so. *Held*: The juvenile court did not err. DHS delayed father's referral because (1) father was arrested in the week following the order and (2) a psychologist recommended that father needed to demonstrate at least one year of sobriety before ensuring that batterer's intervention would be effective, which he had not yet done. Given those two facts, and in light of the particular circumstances of father and children, the juvenile court did not err.

Affirmed.

Katherine E. Tennyson, Judge.

Franz Bruggemeier filed the brief for appellant. Also on the brief was Youth, Rights & Justice.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Father appeals from judgments changing the permanency plan for his two children, L and C, from reunification to adoption. He specifically challenges the juvenile court's[1] determination that the Department of Human Services (DHS) made reasonable efforts to reunify father with his children. We address the sole question of whether DHS's efforts were reasonable despite a delayed referral for certain services. We conclude that the delay was reasonable under the circumstances and therefore affirm the judgments.

L and C were in DHS custody between 2014 and 2016 after they witnessed father assault their mother.[2] During that time, DHS referred father to substance abuse and domestic abuse treatment services, and the juvenile court dismissed that case in April 2016 when it found that father had ameliorated the bases for jurisdiction. In June 2017, police arrested father on various charges, including child neglect. When officers arrived at father's home to check on his children, the house was unlocked and they found L (10 years old) and C (five years old) alone. The children had easy access to several dangerous and unsanitary items, including knives, lighters, methamphetamine pipes, and heroin needles. Shortly thereafter, DHS was granted temporary custody of the children and it referred father to a drug and alcohol assessment. Father spent several days in inpatient substance abuse treatment.

_____

[1] The relevant proceedings in this consolidated juvenile dependency case were conducted by a juvenile referee, whose findings and rulings were fully adopted by the juvenile court.

[2] The parties do not request that we engage in *de novo* review under ORS 19.415(3)(b), and we see no reason to do so. *See* ORAP 5.40(8)(c) (giving us discretion to engage in *de novo* review in "exceptional cases"). Accordingly, we defer to the juvenile court's findings of historical fact if they are supported by any evidence. *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 315, 388 P3d 1214 (2017). We "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. D. A. N.*, 258 Or App 64, 65, 308 P3d 303, *rev den*, 354 Or 490 (2013) (citing *Dept. of Human Services v. N. P.*, 257 Or App 633, 307 P3d 444 (2013)). We state the facts in accordance with that standard of review.

On August 24, 2017, father admitted that his (1) substance abuse, (2) intimate partner violence and anger, and (3) inability to maintain a safe home interfered with his ability to safely parent his children. The juvenile court accepted his admissions and thereafter found L and C to be within the dependency jurisdiction of the court. Father was ordered to undergo drug and alcohol evaluation and complete any recommended treatment; participate in random drug testing; enroll in parenting classes; obtain stable and suitable housing; maintain regular contact with his children and engage in children's services and therapy if arranged by DHS; undergo a psychological evaluation and begin any recommended treatment; enroll in "anger management/domestic violence counseling/Batterer's Intervention program as directed by DHS"; and maintain contact with DHS. (Underscoring in original.)

DHS first scheduled a psychological evaluation for father in October, but he failed to report for that. It was rescheduled and, in November 2017, Dr. Basham conducted father's psychological evaluation. According to Basham's report, father had a history of relapsing into drug use and violent behavior after periods of sobriety, one of which lasted nearly two years. Basham noted that father had most recently relapsed following his previous dependency case. He also noted that father minimized his history of domestic abuse, which was "a problem at least as serious as his drug use and as much a threat to future parental functioning as his drug use." Basham then concluded that "[t]here would be little point in pursuing treatment for [domestic abuse] until he has a significant period clean and sober, but he now has two clearly identified issues and would need to show progress in both of those before he would be ready to resume care of his children." Basham concluded that father needed at least one year of sobriety before DHS could accurately assess his progress in batterer's intervention or domestic violence counseling.

Father did not respond to DHS's attempts to contact him for nearly half a year after that evaluation. A review hearing was scheduled for January 12, 2018, but father was not present because he had been arrested the night before.

To that point, DHS had attempted to provide many of the court-ordered or recommended services, but father avoided contact with DHS throughout fall 2017 and spring 2018.

DHS was not able to successfully contact father until the DHS caseworker saw him at the next review hearing on April 10, 2018. After that hearing, the juvenile referee ordered DHS to refer father to a "FIT" screening (a drug and alcohol assessment) and batterer's intervention program "within one week." That was the first time the court affirmatively ordered DHS to provide a referral for any type of domestic violence program. Even the original order for services directed to father required such services only "as directed by DHS." In other words, until the April 10, 2018, hearing, the decision whether to refer father for domestic violence services arguably remained up to DHS. DHS did refer father to a FIT screening following the April 10, 2018, hearing, but, before it referred him to batterer's intervention, father was again arrested. He voluntarily entered Washington County's Family Sentencing Alternative Pilot Program (FSAP), which he completed in August 2018. Immediately after he completed FSAP, he began outpatient substance abuse treatment. He began his sobriety on May 8, 2018.

Father's participation in FSAP prevented him from attending a review hearing in July 2018. At that hearing, the juvenile referee found that DHS continued to make reasonable efforts. Father has not challenged that ruling. By father's next review hearing on October 12, 2018, DHS had not yet referred father to a batterer's intervention program, despite the April court order. Notwithstanding the lack of referral, the referee again found that DHS continued to make reasonable efforts toward reunification and, once again, father has not challenged that ruling. In both the July and October review hearings, the referee found that DHS's efforts were reasonable because DHS had provided father with FIT and other residential treatment referrals, a psychological evaluation, and case management services, and because it had facilitated communication between father and children. The referee made no mention of DHS's lack of a referral to batterer's intervention.

On November 14, 2018, one year after Basham's psychological evaluation and after only seven months of sobriety, DHS referred father to batterer's intervention. The batterer's intervention treatment provider and the DHS caseworker spent nearly one month setting up father's treatment plan. On December 12, DHS paid for father to attend an intake screening at the program. DHS and the provider then spent several weeks deciding who would pay for treatment. DHS and father wanted DHS to pay for it, but the provider insisted that its participants pay for at least some treatment costs. DHS ultimately arranged for funding for father's treatment, which he began in January 2019.

In addition to assisting father with treatment, DHS made numerous efforts throughout the case to facilitate communication between father and L and C. Any communication between father and the children filtered through numerous therapists and caseworkers. However, L, the older child, refused multiple times to have father's letters read to her. In October 2018, before father's review hearing, L wrote to the court requesting that she not have any contact with father because, among other concerns, she witnessed multiple instances of father's domestic violence toward his girlfriend and she did not feel safe in his home. She also wrote a letter directly to father telling him that he made her feel unsafe and that he failed his "second chance" at being her parent. C did listen to a therapist read him a letter from father in the fall of 2018. However, when he heard what father wrote, he immediately recalled a traumatic experience in which he witnessed father's violence toward his girlfriend, which then caused C to have a nervous reaction. Both children consistently expressed a desire to remain with their foster parents and to never again have contact with father. By the time of the permanency hearing, which the court held in January 2019, the children had been in DHS custody for over 18 months. They had also spent approximately 32 months in substitute care before this case, meaning that, by the 2019 permanency hearing, they had been in substitute care for 50 of the previous 66 months.

The referee considered the above facts when she presided over father's three-day permanency hearing in

January 2019. Focusing on father's recent sobriety and progress in batterer's intervention services, the referee found that the children could not safely return home within a reasonable amount of time, explaining:

> "Father has maintained sobriety since his release from custody in November, and appears to be stable and engaging well with the intensive FSAP probation program. Father has a long pattern of sobriety prior to catastrophic relapses, however, so a period of sobriety much longer than he currently has would be necessary to have assurance that this is not yet another round in his ongoing cycle of substance abuse. Father is only just now beginning [batterer's] intervention services, which will be a critical service for him. The evidence demonstrates a long and extreme pattern of domestic violence on Father's part, most recently towards his girlfriend [S] in front of the children. Father continues in a relationship with [S.] *** The ongoing traumatic responses from the children clearly demonstrate that Father needs significant [batterer's] intervention and that a great deal more work would be needed before the children could even contemplate visitation with Father, much less having [S] reintroduced into their lives."

She also found that father had yet to ameliorate the court's jurisdictional bases:

> "The Court finds that the barriers to return at this time are Father's short period of sobriety given his long history of relapse, Father's lack of engagement thus far to address his domestic violence issues, and the traumatic responses that the children continue to have as a result of this behavior by Father. Father has yet to ameliorate the jurisdictional bases. Were this still close to the removal of the children, Father would be owed an opportunity to further engage in [batterer's] intervention and to demonstrate a long period of sobriety. At this time, however, the children have been in substitute care for 19 months and have already been in foster care twice in the past. The children's therapist testified credibly that both children need permanency as quickly as possible and made clear that another failed reunification would be devastating for the children. The children cannot wait any longer to see whether Father can maintain sobriety and address his long standing domestic violence issues."

Finally, the referee found that DHS made reasonable efforts, which included

> "[m]indsights evaluations of the children with feedback sessions offered to each parent, *** consultation with children's therapist regarding recommendations for visitation for both parents, FIT screening for Father, residential treatment waitlist referral for Father, psychological evaluation for Father, Batterers Intervention referral for Father plus payment for intake and ongoing work to arrange contact for payment of service, coordination with children's therapist for Father to write appropriate clarification letters to the children, coordination with Father's [probation officer] and treatment providers, case management services."

The juvenile court adopted the referee's findings and entered judgments changing the children's permanency plans from reunification to adoption. Father now appeals from those judgments, assigning error to the court's determinations that DHS made reasonable efforts. Father argues that DHS's efforts were unreasonable "because DHS delayed the provision of a critical service, one that it was ordered multiple times to provide, to father until it was too late to demonstrate his engagement and progress in that service."

When a juvenile court grants DHS temporary custody over a child, DHS must protect the parents' fundamental rights by "offer[ing] appropriate reunification services to parents and guardians *** to make it possible for the child to safely return home within a reasonable time." ORS 419B.090(5). A juvenile court may change a child's permanency plan away from reunification only if DHS proves, by a preponderance of evidence, "that (1) it made reasonable efforts to make it possible for the child to be reunified with his or her parent and (2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017) (citing ORS 419B.476(2)(a)). DHS's efforts toward reunification are reasonable if DHS gives "a parent a fair opportunity to demonstrate the ability to adjust his or her behavior and act as a 'minimally adequate' parent." *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 322, 388 P3d 1214 (2017) (quoting *S. M. H.*, 283 Or App at 305-06).

We measure the reasonableness of DHS's efforts by looking at the totality of the circumstances. *Dept. of Human Services v. M. K.*, 257 Or App 409, 418, 306 P3d 763 (2013). We look at the particular circumstances of each parent's case to determine whether the type and extent of services offered rendered DHS's efforts reasonable. *See C. L. H.*, 283 Or App at 323 (requiring "something resembling a cost-benefit analysis" to determine whether failing to offer a specific type of service was reasonable); *State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 507, 130 P3d 801 (2006) ("[T]he reasonableness of DHS's efforts is dependent on the unique circumstances of a particular case[.]"). We especially scrutinize the "period before the [permanency] hearing sufficient in length to afford a good opportunity to assess parental progress." *Dept. of Human Services v. S. S.*, 278 Or App 725, 735, 375 P3d 556 (2016) (internal quotation marks omitted). We also consider "whether a parent has attempted to make appropriate changes in his or her life * * * and whether parents ignored or refused to participate in plans suggested by the state[.]" *State ex rel Dept. of Human Services v. Shugars*, 208 Or App 694, 712, 145 P3d 354 (2006) (citations omitted). Additionally, because we consider the child's health and safety as "paramount," ORS 419B.476(2)(a), we evaluate DHS's efforts "in light of the particular circumstances of [the parent and child]," *Dept. of Human Services v. S. W.*, 267 Or App 277, 290, 340 P3d 675 (2014).

When DHS does not provide a particular service to a parent, we view the adequacy of DHS's efforts in light of the potential benefits that providing that service could have yielded. *Dept. of Human Services v. S. N.*, 250 Or App 708, 717, 282 P3d 901, *rev den*, 352 Or 564 (2012). In *S. N.*, for example, the juvenile court adopted a psychologist's findings that, given that the parent's mental health issues "could not be effectively treated," mental health treatment would "invariably be low yield." *Id.* It found DHS's efforts reasonable, despite the fact that it did not refer the parent to intensive mental health treatment. *Id.* We affirmed, holding that DHS's efforts were reasonable in light of the likely ineffectiveness of those withheld services. *Id.*

Here, the state argues that "referring father to Batterer's Intervention earlier, against Dr. Basham's

recommendation, would have been unreasonable." We agree. As a preliminary matter, and as previously mentioned, the court's original order concerning domestic violence services left the decision about whether to refer father for those services up to DHS. Between the time the court assumed jurisdiction over L and C in August 2017 and the time of father's sobriety on May 11, 2018, father was arrested twice and the record indicates that he largely refused contact with DHS. Once sober, father entered into a deferred sentencing program and engaged in substance abuse treatment. At that point, father had only been sober for about four months, which was well short of the year that Basham suggested that father demonstrate before entering a domestic violence program. The court's April 2018 order for DHS to provide a referral for batterer's intervention services notwithstanding, the record, including Basham's testimony, indicates that father would not likely have benefitted from batterer's intervention until May 2019 or later. The juvenile court did not enforce its April 2018 order. It continued to make reasonable efforts findings despite DHS's failure to comply with the order and the record does not reflect that father sought enforcement of the order or a "no reasonable efforts" finding until the January 2019 permanency hearing.

Looking to the rest of DHS's efforts, the juvenile court found that DHS referred father to various evaluations and drug treatments, facilitated communication between father and L and C, referred father to substance abuse treatment, and ultimately arranged funding for his batterer's intervention treatment, despite the provider's initial objection to DHS paying for treatment. Under the totality of the circumstances, those efforts gave father "a fair opportunity to demonstrate the ability to adjust his *** behavior and act as a minimally adequate parent." *C. L. H.*, 283 Or App at 322 (internal quotation marks omitted).

We, of course, also "evaluate DHS's efforts over the life of this case, in light of the particular circumstances of father and [L and C]." *S. W.*, 267 Or App at 290. At the time of the permanency hearing, this case had been active for 19 months. Father's previous case lasted nearly two years, meaning that L and C had been in substitute care for the vast majority of the past five years. The juvenile court found

that "another failed reunification would be devastating for the children. The children cannot wait any longer to see whether father can maintain sobriety and address his long-standing domestic violence issues." DHS's efforts to provide services to father reflected the urgency that the children's circumstances required. Again, the delays to the treatment recommended are largely attributable to father, not DHS. DHS, in fact, referred father to treatment much earlier than recommended.

Notwithstanding the fact that the juvenile referee ordered DHS to refer father to batterer's intervention in April 2018, father's circumstances precluded an earlier referral. Accordingly, the juvenile court did not err in making its reasonable efforts determination.

Affirmed.