Argued and submitted March 7, vacated and remanded for reconsideration of father's motion to dismiss; otherwise affirmed May 14, 2014

In the Matter of S. C. C. V.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. B. V.,
*Appellant.*

Douglas County Circuit Court
1000517;
Petition Number 10JU366, 12JU297;
A155043 (Control)

In the Matter of H. B. B. V.,
aka H. H.-B., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. B. V.,
*Appellant.*

Douglas County Circuit Court
1000518;
Petition Number 10JU366, 12JU297;
A155044

327 P3d 564

Valerie Colas, Deputy Public Defender, argued the cause for appellant. On the opening brief were Peter Gartlan, Chief Defender, and Kimberlee Petrie Volm, Deputy Public Defender, Office of Public Defense Services. With her on the reply brief was Peter Gartlan, Chief Defender.

Karla H. Ferrall, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this juvenile dependency case, father appeals two judgments that changed the permanency plan for two of his children from reunification to adoption. *See* ORS 419B.476. He assigns error to the juvenile court's denial of his motion to dismiss the juvenile court's jurisdiction over the children, the court's decision to change the permanency plans from reunification to adoption, and the court's admission of certain exhibits for the purpose of making those two decisions.[1] Those assignments each spring from father's legal argument that the trial court improperly relied on the exception to the rules of evidence created by ORS 419B.325(2) to receive the challenged exhibits. He contends that the statute does not apply to either juvenile court jurisdictional determinations or to certain aspects of permanency hearings. We agree with father that, for purposes of ruling on father's motion to dismiss, the juvenile court's admission and consideration of the challenged exhibits was error. We therefore vacate the parts of the judgments denying father's motion to dismiss and remand for further consideration of that motion under the applicable evidentiary rules. Otherwise, we affirm.

The pertinent facts are undisputed and involve procedural matters. The juvenile court asserted jurisdiction over the two children as to father on four separate bases that generally pertained to his inability to safely parent them. The children were placed in foster care and a plan to reunite them with father was implemented. Father subsequently filed a motion to dismiss the juvenile court's jurisdiction. The juvenile court considered that motion at a contested permanency hearing at which the Department of Human Services (DHS) and the children sought to change the permanency plan from reunification to adoption. Early in the hearing, the parties and court agreed that the motion to dismiss and the permanency plans should be considered simultaneously; accordingly, the parties did not specify the purpose for which any given testimony or evidence was introduced.

---

[1] Father also assigns error to the denial of his motion for continuance, a contention that we review for abuse of discretion. *See, e.g., State ex rel Dept. of Human Services v. K. C.,* 227 Or App 216, 230, 205 P3d 28, *rev den,* 346 Or 257 (2009). We have considered that assignment and reject it without further discussion.

At the hearing, DHS moved to admit several exhibits into evidence, including a psychological evaluation of father, a police report describing an incident involving father and the children, counseling records, and certain of the children's medical records. Father objected to the admission of the exhibits on the ground that they "are hearsay and contain hearsay"; he argued that the exhibits were not admissible for purposes of either the motion to dismiss jurisdiction or the permanency-plan determination. In response, DHS did not attempt to argue that the exhibits, or any portion thereof, were admissible under the rules of evidence. Instead, in an argument that was opposed by father, DHS urged that the challenged exhibits were admissible for both purposes under the exception to the rules of evidence created by ORS 419B.325(2). The trial court relied on that statute to receive the challenged exhibits.

The trial court denied father's motion to dismiss the jurisdictional petitions and also changed the permanency plan from reunification to adoption. In a letter addressed to the parties, the court explained those decisions, in part, by citing extensively to information contained in several of the challenged exhibits.

The parties' dispute on appeal revolves around ORS 419B.325:

"(1) At the termination of the hearing or hearings in the proceeding, the court shall enter an appropriate order directing the disposition to be made of the case.

"(2) For the purpose of determining proper disposition of the ward, testimony, reports or other material relating to the ward's mental, physical and social history and prognosis may be received by the court without regard to their competency or relevancy under the rules of evidence."

Pointing to the phrase, "[f]or the purpose of determining proper disposition of the ward," father asserts that subsection (2) of the statute, which operates as an exception to the otherwise applicable rules of the Oregon Evidence Code, OEC 101(1),[2] does not apply to a juvenile court's jurisdictional

---

[2] OEC 101 provides, in part, "(1) The Oregon Evidence Code applies to all courts in this state except for: [inapplicable exceptions]." As noted below, the

determination. In other words, he contends that a jurisdictional determination—such as was called for by his motion to dismiss—does not constitute a "disposition" as that term is used in the statute. He advances a related argument with respect to permanency-plan hearings, contending that a permanency hearing consists of two phases, an "adjudicative" phase and a "dispositional" phase. He argues that the exception to the rules of evidence created by subsection (2) only applies at the latter phase and that the trial court therefore erred in receiving and considering the challenged exhibits for purposes of conducting the former.

DHS argues that, in the context of a parent's motion to dismiss, a juvenile court's jurisdictional determination is a "disposition" within the meaning of the statute. With respect to the permanency hearing, DHS responds that such a hearing is entirely "dispositional" and that the suspension of evidentiary rules created by ORS 419B.325(2) therefore applies to all aspects of a permanency hearing.

Father's assignments of error present legal questions that we review for legal error. *E.g., Hannemann v. Anderson,* 251 Or App 207, 208, 283 P3d 386 (2012). Our task is to discern the legislature's intent, which we do by examining the text of the statute in context before considering any legislative history that appears useful to the analysis. *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin by considering whether ORS 419B.325(2) applies in the context of a motion to dismiss juvenile court jurisdiction. That question hinges on what the legislature intended by the use of the term "disposition of the ward," because it is only for that limited purpose that the legislature authorized the suspension of otherwise-applicable evidentiary requirements. Father argues that the "disposition" of the ward refers solely to the court's ultimate determination that directs the ward's "placement, care, and supervision." DHS takes a broader view of the word, arguing that a juvenile court's ruling on a motion to dismiss jurisdiction falls within its reach. "Disposition" should be given its

---

exception created by ORS 419B.325(2) is also provided in OEC 101(4)(i), 262 Or App at 755.

"plain, natural, and ordinary meaning," which we attempt to do by turning to the relevant dictionary definition of the term. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993); *Dept. of Rev. v. Faris*, 345 Or 97, 101, 190 P3d 364 (2008). That definition provides:

> "**1** **:** the act or the power of disposing or disposing of or the state of being disposed or disposed of: as **a** **:** ADMINISTRATION, CONTROL, MANAGEMENT; * * * **b** **:** a placing elsewhere, a giving over to the care or possession of another, or a relinquishing * * * **:** the power of so placing, giving, ridding oneself of, relinquishing, or doing with as one wishes * * *."

*Webster's Third New Int'l Dictionary* 654 (unabridged ed 2002). That definition can be read to support father's argument that "disposition" refers only to the court's exercise of its power to direct the ward's placement, care, and supervision (the "act" of administering or "giving over to the care or possession of another") as well as DHS's argument that "disposition" encompasses the court's jurisdictional decisions (the "power" to administer or place elsewhere).

When read in context, however, it becomes clear that the legislature did not intend the relaxed evidentiary standard of ORS 419B.325(2) to encompass a juvenile court's jurisdictional determination. As an initial point, the other uses of the term "disposition" in the juvenile dependency statutes either support father's position or, at the least, do not support DHS's. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). For instance, ORS 419B.117(1)(c) provides that notice must be given to a parent or guardian of their right to "appeal a decision on jurisdiction *or* disposition made by the court." (Emphasis added.) That disjunctive phrasing suggests that a jurisdictional determination is distinct from the "disposition" of the ward. Additionally, in the protective-custody context, ORS 419B.168 refers to "the court or a person appointed by the court to *effect* disposition" (emphasis added); ORS 419B.175 refers to "a person designated by a court to effect disposition of a child." Of course, no entity but the court is authorized to effect a juvenile court's jurisdiction, but other persons may naturally be appointed to effect

the court's directions as to the ward's placement, care, or supervision.

More revealing, however, is the fact that, in order to establish juvenile court jurisdiction over a child in the first instance, "[t]he facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419B.100(1), unless admitted, must be established by a preponderance of competent evidence."[3] ORS 419B.310(3). There is no argument from DHS that ORS 419B.325(2) applies to an initial determination whether a child is within the juvenile court's jurisdiction. Nonetheless, DHS's position is that, once juvenile court jurisdiction has been established with competent evidence, the exception of ORS 419B.325(2) applies to subsequent challenges to that jurisdiction.

We answer that contention with two points. First, where the legislature has intended for the exception of ORS 419B.325(2) to apply—*e.g.*, in permanency hearings and review hearings—the legislature has stated that intent. *See* ORS 419B.449(2) (at a review hearing the "court may receive testimony and reports as provided in ORS 419B.325"); ORS 419B.476(1) (same for permanency hearing). The legislature has stated its intent that jurisdiction must be established in the first instance with competent evidence, ORS 419B.310(3), but has not expressed an intent to exempt subsequent jurisdictional determinations from that competent-evidence requirement. Second, the factual and legal considerations that are relevant to establishing jurisdiction in the first instance and to maintain jurisdiction in the face of a motion to dismiss do not differ in any significant respect. *Compare, e.g., State ex rel Juv. Dept. v. Smith*, 316 Or 646, 653, 853 P2d 282 (1993) ("If, after considering all the facts, the juvenile court finds that there is a reasonable likelihood of harm to the welfare of the child, the court may take jurisdiction."), *with Dept. of Human Services v. J. M.*, 260 Or App 261, 267, 317 P3d 402 (2013) ("[W]hen the court's continued jurisdiction is at issue, DHS has the burden of showing that

---

[3] "Evidence is 'competent' when it is relevant, material and admissible[. \*\*\* T]he juvenile court's rulings thereon are governed by the Oregon Evidence Code." *State ex rel Children's Services Div. v. Page*, 66 Or App 535, 538, 674 P2d 1196 (1984) (internal footnote omitted).

the conditions that were originally found to endanger the child persist."). Moreover, the results that flow from either determination are identical, *viz.*, juvenile court jurisdiction, *vel non*. In view of the important interests at stake, the legislature has imposed a significant evidentiary threshold that those who would seek to make a child a ward of the court must cross by using only competent evidence. In the absence of an explicit indication to the contrary, it is not persuasive to suggest that the legislature intended for the juvenile court's jurisdiction, once established with competent evidence, to be perpetuated with less-than-competent evidence. We therefore conclude that ORS 419B.325(2) cannot serve as the basis for the court to receive or consider evidence for the purpose of making a jurisdictional determination.[4]

We turn now to consider the arguments regarding the permanency-hearing portion of the juvenile court proceedings. ORS 419B.476, which establishes procedures and standards for the permanency hearing, explicitly incorporates the evidentiary exception of ORS 419B.325: "A permanency hearing shall be conducted in the manner provided in ORS 418.312, 419B.310, 419B.812 to 419B.839 and 419B.908, except that the court may receive testimony and reports as provided in ORS 419B.325." ORS 419B.476(1). When DHS seeks to change a ward's permanency plan from reunification to adoption, DHS must prove that (1) it made reasonable efforts to effect reunification, and (2) that, despite those efforts, the parent did not make sufficient progress to allow the child's safe return home. ORS 419B.476(2); *State ex rel Juv. Dept. v. C. D. J.*, 229 Or App 160, 164-65, 211 P3d 289 (2009). If the court determines that reunification is not possible under that standard, it must then determine

---

[4] DHS argues that father waived his arguments regarding the challenged exhibits because, in making his objections to their admission, he failed to distinguish the objectionable hearsay portions of the exhibits from the nonobjectionable portions, citing *State v. Brown*, 310 Or 347, 800 P2d 259 (1990) (when evidence is "offered as a whole and an objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal if any portion of the offered evidence was properly admissible") (internal quotation marks omitted). That argument, however, is inapt because DHS urged the juvenile court to receive the challenged exhibits for all purposes under ORS 419B.325(2) and the court did receive them on that basis. Father made the legal argument that ORS 419B.325(2) was an improper basis on which to admit the evidence, the precise issue he raises on appeal.

an appropriate permanency plan for the ward (*e.g.*, adoption, guardianship, or placement with a relative). *See* ORS 419B.476(5).

In recognition of the stark fact that ORS 419B.325 applies to permanency hearings, father attempts to characterize a permanency hearing as a bifurcated process consisting of two phases. He refers to the juvenile court's determination of DHS's efforts and his progress under ORS 419B.476(2)(a) as the "adjudicative" phase of a permanency hearing. Father characterizes the juvenile court's determination of the appropriate permanency plan as the "dispositional" phase of the permanency hearing, and he contends that ORS 419B.325(2) operates to eliminate evidentiary requirements only at that second phase. Under that conceptualization, he contends that the trial court erred in receiving and considering the challenged exhibits in determining whether his progress was insufficient to allow his children to be safely returned to his care within a reasonable time.[5]

We begin by noting that the terms of ORS 419B.470 to 419B.476 (governing permanency hearings) do not draw the distinction between "adjudicatory" and "dispositional" phases in a permanency hearing that father proposes. In support of his argument for such a bifurcation, father notes that ORS 419B.476(1) also incorporates ORS 419B.310, which, again, and among other things, provides that the facts alleged in the jurisdictional petition must be proved by "competent" evidence. He thus reasons that the legislature, by incorporating two different sets of evidentiary rules at a permanency hearing, must have intended those differing rules to apply to different phases of the hearing. That argument, however, is of no help to father in the face of ORS 419B.476(1)'s explicit incorporation of ORS 419B.325, an incorporation that does not admit of any exception or qualification: "the court may receive testimony and reports as provided in ORS 419B.325." Moreover ORS 419B.310(3), insofar as it addresses evidentiary rules, provides only that the "facts alleged in the petition showing the child to be within

---

[5] Father does not challenge the court's finding that DHS made reasonable efforts to reunite him with his children.

the jurisdiction of the court" must be established by competent evidence. That statute does not purport to direct the evidentiary rules that govern outside the limited context of jurisdictional determinations. Father's argument also overlooks that a juvenile court may be called to consider both jurisdictional questions and permanency plan questions at a permanency hearing, as was the case here. Thus the incorporation of ORS 419B.310 in ORS 419B.476(1) strongly indicates the intent to require competent evidence for purposes of making a jurisdictional determination at a permanency hearing, a conclusion that, we note, reinforces our conclusion regarding the evidentiary rules that apply to a jurisdictional determination.

Next, despite father's assertion that the permanency hearing is a bifurcated proceeding, the hearing, in the end, serves but one purpose. Although ORS 419B.476 sets out many different steps that the juvenile court must take to arrive at a permanency decision—steps that vary depending on various circumstances of the ward, the current permanency plan, the proposed change to the plan, and the parents—it is evident in its very nature that the purpose of a permanency hearing is to determine an appropriate plan for the placement, care, and supervision of the ward, *viz.*, an appropriate "disposition." The determination under ORS 419B.476(2)(a) that father refers to as the "adjudicative phase"—assessing father's progress and DHS's efforts to determine if reunification is possible—is merely one step that the trial court is sometimes required to take along the way to its ultimate determination. Even under father's understanding of the term, reunification with the parent is one possible "disposition of the ward." *See* ORS 419B.476(5)(c) - (g) (possible permanency plans include "return home," adoption, establishment of a legal guardian or placement with a "fit and willing" relative, and a "planned permanent living arrangement"). If the court determines that reunification is possible under the applicable standard and that the plan will accordingly be reunification, that determination, in effect, constitutes a "disposition of the ward." If, on the other hand, the court determines that reunification is not possible, as was the case here, the court has eliminated one possible disposition among several. In either event, the juvenile court's

determination of father's progress in light of DHS's efforts under ORS 419B.476(2)(a) is one that is part of the broader effort to arrive at an appropriate "disposition of the ward."

It is true that the "reasonable efforts" and "sufficient progress" determinations tend to concern the actions taken by DHS and father, as opposed to the circumstances of the ward. It is also true that the type of "testimony, reports or other material" that the court may receive under ORS 419B.325(2)—*viz.*, those "relating to the ward's mental, physical and social history and prognosis"—might not tend to bear greatly on what father and DHS have done *vis-à-vis* their respective reunification efforts. We note, however, that the "reasonable efforts" and "sufficient progress" determinations are explicitly centered on whether the *ward* may safely return home, and that the court must make those determinations with the "ward's health and safety the paramount concerns." ORS 419B.476(2)(a). As we have observed, "evidence relates to a ward's 'mental, physical and social * * * prognosis' if it provides information that is relevant to a forecast or prediction of how the ward will fare in the future, and it necessarily includes information about the ward's future potential caregivers." *Dept. of Human Services v. B. J. W.*, 235 Or App 307, 312, 230 P3d 965 (2010) (omission in *B. J. W.*). It is thus quite natural that the legislature would intend for the juvenile court to be able to consider the types of ward-centric evidence described in ORS 419B.325(2) in assessing DHS's efforts and father's progress under ORS 419B.476(2)(a).

Father nonetheless argues that the 1981 legislative commentary to the Oregon Evidence Code supports his view of a permanency hearing as a bifurcated process. OEC 101(4)(i) provides that certain evidentiary provisions do not apply to "[p]roceedings to determine proper disposition of a child in accordance with ORS 419B.325(2) and 419C.400(4)." The commentary behind that provision provides:

> "The Legislative Assembly deleted the Advisory Committee's blanket exemption of juvenile departments from courts to which the Oregon Evidence Code applies. Rule 101(1). The Legislative Assembly believes that the Code should apply in the adjudicatory phase of a juvenile court proceeding,

whether for delinquency or dependency. However it added paragraph [(i)] to subsection (4) of Rule 101 to clarify that during the dispositional phase of a juvenile court proceeding, evidence may be admitted in accordance with ORS [419B.325(2)]. This statute allows the receipt of materials relating to the child's mental, physical and social history and prognosis without regard to their competency or relevance under the rules of evidence."

OEC 101 Commentary (1981). As noted, father attempts to argue that the "reasonable efforts" and "sufficient progress" determinations of ORS 419B.476(2)(a) constitute the "adjudicatory phase," but that is clearly not what the quoted commentary means by "adjudicatory phase" because the test of ORS 419B.476(2)(a) was not enacted until well after 1981. *See* Or Laws 1999, ch 859, § 15. Moreover, an examination of our case law indicates that the term "adjudicatory phase" has long been understood—in both the delinquency and dependency contexts—to refer to the juvenile court's jurisdictional determination, rather than the determination of whether reunification of the family is possible under ORS 419B.476(2)(a). *See State v. Stewart/Billings*, 321 Or 1, 13 n 3, 892 P2d 1013 (1995) ("'Juvenile court delinquency proceedings have two aspects: (a) the adjudicatory or jurisdictional phase, in which the court must decide whether the young person's conduct warrants juvenile court jurisdiction; and (b) the dispositional phase, in which the judge is faced with the task of what to do with a youth over whom jurisdiction has been established.'" (Quoting Robert H. Mnookin and D. Kelly Weisberg, *Child, Family and State: Problems and Materials on Children and the Law* 1008 (2d ed 1989)); *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 563-64, 857 P2d 560 (1993) (using the term "adjudicatory hearing" to refer to the "jurisdictional phase" of a juvenile delinquency proceeding); *State ex rel Juv. Dept. v. Reding*, 23 Or App 413, 416, 542 P2d 934 (1975) (noting two relevant determinations in dependency case: "the first, whether facts produced under the rules of evidence justify the court's taking jurisdiction of the child and, second, if so, the disposition to be made of the child under more relaxed rules of evidence"). In sum, we conclude that the trial court did not err in relying on ORS 419B.325(2) to receive the challenged

exhibits for the purpose of making its determination under ORS 419B.476(2)(a).[6]

Father urges that, even when the challenged exhibits are considered, there is insufficient evidence to support the court's denial of his motion to dismiss and that we should reverse on that basis.[7] Although DHS advances arguments why several of the exhibits, or at least portions thereof, were nonetheless competent under the rules of evidence, we are not in a position to determine what the record would look like if it had been properly developed in an adversarial setting under the applicable evidentiary rules. We therefore conclude that the appropriate course is to remand this case to the trial court to reconsider the motion to dismiss in light of the applicable evidentiary rules.

Vacated and remanded for reconsideration of father's motion to dismiss; otherwise affirmed.

---

[6] Father's brief cites, in a footnote, several cases implicating a parent's liberty interest under the Due Process Clause of the federal constitution, and states that, when DHS is attempting to change the permanency plan to something other than reunification, "fundamental fairness" requires DHS to make the required showing with competent evidence. Beyond that cursory and conclusory assertion, however, he does not advance any argument that the Due Process Clause required the court to confine DHS's proof to competent evidence. We therefore decline to address that argument. *See, e.g., Wilson v. Dept. of Corrections,* 259 Or App 554, 557 n 3, 314 P3d 994 (2013) (declining to address a constitutional argument that was asserted but not developed).

[7] Father does not advance an argument that there was insufficient evidence to support the change in permanency plan when the challenged exhibits are considered. Therefore, in light of our conclusion that the challenged exhibits were not received in error by virtue of ORS 419B.325(2) for purposes of the change in permanency plan, we are not called upon to review the sufficiency of the evidence regarding that change.