***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted November 28, 2022, reversed and remanded June 28, 2023

In the Matter of H. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. T.,
aka J. F.,
*Appellant.*

Umatilla County Circuit Court
20JU00534; A178732

Robert W. Collins, Jr., Judge.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

JACQUOT, J.

Reversed and remanded.

_____

\* Jacquot, J., *vice* James, J. pro tempore.

**JACQUOT, J.**

Mother filed a written motion to dismiss wardship over her daughter, H. The juvenile court denied her motion at a hearing on the basis that mother's substance abuse continued to interfere with her ability to safely parent H. Mother appeals, raising three assignments of error. We determine that the Department of Human Services (DHS) did not meet its burden to prove jurisdiction needs to continue. Accordingly, we reverse and remand for the juvenile court to dismiss the jurisdiction and terminate the wardship over H.

## THE HEARING

H was removed in March 2020, and jurisdiction was established on August 18, 2020. Mother filed a written motion to dismiss jurisdiction before the permanency hearing that was scheduled to address DHS's request to change the plan to guardianship. The court ruled on mother's motion to dismiss and set over the permanency decision. At the outset of the hearing the court dismissed all of the jurisdictional bases except that "[m]other's substance abuse interferes with her ability to safely parent the child."

DHS called two witnesses to prove that jurisdiction was still warranted due to mother's substance abuse. Nicholson assesses families who have lost their children due to substance abuse and connects the parents with services to address those issues. He evaluated mother twice over the course of the case. Initially, he recommended she participate in outpatient treatment. He described the reason for the recommendation:

> "At that time, she admitted to marijuana use, and because of the way the State feels about marijuana use, we don't, you know, as far as the client goes, we—we really don't know how it affects her, how much is, in fact, being consumed, exactly what level of danger that would put the child in."

Nicholson evaluated mother again a year later. He conducted an addendum assessment and at that time did not find that treatment was needed because mother's marijuana use had "reduced significantly." After the DHS caseworker

questioned the "no treatment" recommendation, Nicholson rereferred mother to Level I outpatient treatment. At the end of Nicholson's testimony, he was asked "Do you have any evidence today that [mother] has a substance abuse problem?" He replied, "I do not."

DHS's other witness was Bensching, the addiction recovery team (ART) caseworker assigned to mother's case. Bensching's primary job is to refer parents to treatment as recommended by Nicholson. She also tracks parents' progress and orders urinalysis testing. Bensching referred mother to Umatilla County Human Services. Mother completed that program's assessment but did not return to develop a treatment plan. Bensching was asked if, to her knowledge, mother had completed alcohol and drug treatment. Her answer was "no." Bensching had directed mother to provide a urine sample for a private lab sixteen times over the course of the case. Mother provided a sample that was clean for all substances in November 2020. Some of the others she missed due to work, travel, or inability to provide a sufficient sample. Eleven of them did not return any results; Bensching testified that she got information from the lab that those were "no shows." The court asked her if there was any reason to believe mother continues to pose an ongoing risk to her child from abuse of substances, she answered,

"I guess the way that I would answer that is we—we don't have proof of [mother's] sobriety this point.

"We've attempted 16 UAs. We have one negative, which was over—well over a year ago, and she has not completed treatment. So we don't have anything to back up that she is currently clean and sober today."

Bensching then acknowledged that she had no "proof of mother's current substance use."

At the end of the testimony, the court denied the motion to dismiss, stating:

"This is an interesting case, but I find that the mother does continue to present a risk of harm to the child.

"[Mother], if you have been sober, it would—well first of all, what the evidence shows in this case is that there were

15 referrals for UAs over the last year or maybe a little longer, that one of them was complied with right at the beginning. And from that point on, there was no compliance with the UAs that were ordered.

"Now, the mother is arguing that because we don't have affirmative evidence of her use that—and we cannot continue to prove with current facts what would be necessary to approve—to prove initial jurisdiction in the case, that—that we've lost the right to continue the child in the custody of DHS.

"* * * * *

"She was recommended to go to outpatient treatment. She did not follow through with that. *** She was required to take UAs to verify her sobriety or lack of sobriety. She refused to take the UAs.

"So we—we fast-forward to a point in time where we don't have actual current proof that she's actively using, but we do have evidence that she's refused to take UAs that would prove her use or her lack—or the absence of use.

"* * * * *

"We can't watch a parent 24/7. Any parent can use and not be caught if they—if they refuse to take UAs. I can only assume that the reason she refused to take the UAs is because she feared what they would show.

"So I find that the situation continues and that mother presents a risk of harm to her child from her substance abuse because she refuses to take UAs and refuses to participate in counseling to ameliorate those problems."

## HEARSAY EVIDENCE

Hearsay is generally inadmissible. OEC 802. The party seeking to admit hearsay has the burden of proving admissibility by showing that the statement is not hearsay or falls within an exception to the hearsay rule. *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 222, 503 P3d 1233 (2022). We review a challenge to the admissibility of hearsay for errors of law. *Id.* at 247.

DHS sought to admit evidence through a caseworker that mother "no-showed" to eleven urine tests. No one from the laboratory was present to testify. Mother objected. A

motion to dismiss hearing is a jurisdictional hearing, and competent evidence is required. *Dept. of Human Services v. J. B. V.*, 262 Or App 745, 749-52, 327 P3d 564 (2014). The juvenile court admitted the evidence on the basis that this was the type of evidence commonly relied on by social workers in child welfare practice. DHS concedes that the trial court's decision to admit hearsay in a motion to dismiss context under these circumstances constituted error. We agree. We would normally reverse on that basis. However, because prevailing on her other assignments of error would give mother more complete relief in this case, we proceed to the remaining assignments of error.

## MOTION TO DISMISS

In her second assignment of error, mother argues that, "[t]he juvenile court erred in ruling that jurisdiction continued on the basis that mother's 'substance abuse interferes with her ability to safely parent the child.'" In her third assignment of error, she contends, "[t]he juvenile court erred in denying mother's motion to dismiss jurisdiction." We consider them together.

Neither party has requested *de novo* review and we do not employ it here. Thus, we review the decision on the motion to dismiss wardship to determine whether the facts proven at the hearing, supplemented and buttressed by any permissible derivative inferences and viewed in the light most favorable to the juvenile court's disposition, are legally sufficient to establish that the child is reasonably likely to suffer serious injury in the parent's care if wardship is dismissed, due to the conditions and circumstances that were pleaded and proved to establish jurisdiction. *Dept. of Human Services v. M. K.*, 285 Or App 448, 450, 396 P3d 294, *rev den*, 361 Or 885 (2017). We are bound by the juvenile court's express factual findings and inferences if there is any evidence in the record to support them. *Id.* While the plan for the child is reunification with a parent, the burden of proof by a preponderance of competent evidence is on the proponent of continuing jurisdiction. *Dept. of Human Services v. L. C.*, 267 Or App 731, 741, 343 P3d 645 (2014). The party supporting ongoing jurisdiction must show that enough of the bases of jurisdiction continue to exist that

continued interference in the family is warranted. *Dept. of Human Services v. T. L.*, 279 Or App 673, 690, 379 P3d 741 (2016).

ORS 419B.328(1)(a) permits the juvenile court to "dismiss the petition concerning" the child. *T. L.*, 279 Or App at 688-89 ("The legislature has not spoken directly on that point—it has not spoken about motions to dismiss jurisdiction at all. That leaves it to us to devise a way to best effectuate the legislature's intent.").

When the conduct or conditions that form the bases for jurisdiction no longer rise to this level of risk for the child, the court must return her to the care and legal custody of the child's parents or guardians. *Dept. of Human Services v. A. R. S.*, 258 Or App 624, 634, 310 P3d 1186 (2013), *rev dismissed*, 355 Or 668 (2014). The determination involves a two-part inquiry: first, whether the jurisdictional problems persist such that they pose a current threat of serious loss or injury to the child, and second, whether the risk is reasonably likely to be realized. *Dept. of Human Services v. J. V.-G.*, 277 Or App 201, 212, 370 P3d 916 (2016).

Here, the state provided no evidence of current substance abuse, relying entirely on the proposed inference that mother's substance abuse pattern had not changed since jurisdiction because mother refused to prove that it had. It is difficult to compare the situation at the time of jurisdiction with the situation at the time of the motion to dismiss hearing for three reasons: (1) there is no factual record available to the court of what the situation was at the time of the jurisdictional hearing; (2) there is no factual record of how mother was functioning at the time of the motion to dismiss hearing, except the admission by the state that the other three jurisdictional bases had been ameliorated; and (3) there was no mention of the child, her needs or functioning, or her relationship and interactions with mother at the time of the motion to dismiss hearing. There were no exhibits admitted and no judicially noticed prior judgments in this record, and neither mother nor the family's caseworker were called as witnesses.

Thus, the case boils down to a failure of proof. There is nothing in this record to support a finding that mother's

substance abuse continues to impact the child in a way that would subject her to a reasonable likelihood of suffering serious injury in the care of mother. There is not sufficient evidence to support a permissible inference of current risk of harm to H from mother's use and no evidence that if there was a risk it would be reasonably likely to occur upon return to mother's care.

Reversed and remanded.