Submitted February 10, affirmed April 22, 2015

In the Matter of K. B.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. S.,
*Appellant.*

Washington County Circuit Court
J120131;
Petition Number 01J120131;
A157630

348 P3d 1164

Peter Gartlan, Chief Defender, and Valerie Colas, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Cecil Reniche-Smith, Senior Assistant Attorney General, waived appearance for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

In this juvenile dependency case, mother appeals a permanency judgment changing her child's permanency plan from reunification to "another planned permanent living arrangement" (APPLA)—here, permanent foster care.[1] OAR 413-070-0532(1) (defining types of APPLA). Mother contends that the juvenile court's findings were inconsistent, and that, even if the findings are viewed as consistent, the juvenile court erred in concluding that it was not safe for her child to return to her care. We affirm.

Mother does not request that we exercise our discretion to conduct *de novo* review, and we find no reason to do so. *See* ORAP 5.40(8)(c). Consequently, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Mother's fourteen-year-old son, K, was removed from her care in February 2012, due to her inability to meet a DHS safety plan. In April 2012, the juvenile court took jurisdiction based on mother's admissions that she had "failed to provide adequate supervision for [K] on one or more occasion by leaving [K] unsupervised even after [K] has made statements of wanting to harm himself," and that she "has a history of choosing violent and/or unsafe partners, which places [K] at risk of harm." Mother later admitted to an additional basis of jurisdiction—that is, that she "lacks parenting skills necessary to understand the child's behavioral needs and mental health needs." Thereafter, K lived in numerous foster placements and continued to experience significant mental health problems. He engaged in self-harming behavior, threatened and attempted to commit

---

[1] "APPLA," as defined in OAR 413-070-0524(1), means

"a permanency plan for a stable secure living arrangement for a child or young adult that includes building relationships with significant people in the child's life that may continue after substitute care. APPLA is the least preferred permanency plan of the four permanency plan options for a child or young adult and is appropriate only in very limited circumstances."

suicide on multiple occasions, struggled with depression and anxiety, and exhibited other severe behavioral difficulties. He was eventually placed with a foster family with whom he began making progress. K has expressed his desire to remain permanently with that foster family.

On July 28, 2014, the juvenile court held a permanency hearing. At the time, K was thirteen years old, had lived with his foster family for one and one-half years, and had participated in a number of therapeutic services and programs. K continued exhibiting self-harming behavior and emotional difficulties, although "his outbursts [had] lessened in intensity and frequency." He and mother had maintained contact through telephone calls as well as structured face-to-face visits. His counsel emphasized that the juvenile case was "about two and a half years old" and that K "would like to have a little bit more permanency in his life and knowing that he isn't at the edge of going home at any given time ***." Mother responded that she had been making progress toward reunification and that she needed more time, because she wanted reunification "to be careful and methodical, not rushed."[2]

At the hearing, the evidence generally indicated that mother had engaged in a number of efforts pursuant to DHS's action plan and had made individual progress toward DHS's parenting goals. According to DHS's court report dated July 22, 2014, mother participated in family therapy with K, had an unsupervised visit with him, met weekly with an Options employee to develop parenting skills, completed a collaborative problem solving class, was attempting to enroll in an additional program, and was continuing with her alcohol treatment. The report detailed that mother "attends all WRAP meetings, family therapy, and additional services that are asked of her. She tries hard to respect [K's] wishes the best she can, which meant ending weekly phone calls for the time being per [his] request."

_____

[2] At the hearing, DHS requested that the plan remain reunification because the assigned caseworker "feels like [mother] is making some progress" and "feels like she is turning a corner in understanding what she needs to do in her role and how important it is that she be supportive of [K] as well as meeting his needs ***." The state waived appearance on appeal.

The report indicated, however, that there were ongoing emotional and psychological obstacles between mother and K, requiring mother to continue efforts to gain K's trust. DHS advised that poor communication with mother was a trigger for K's self-harming behaviors and outbursts. DHS explained that "[K] does not trust his mother to keep him safe and therefore * * * is susceptible to misinterpreting things that she says." DHS outlined actions that mother should take, including continued participation in parenting training and therapy and completion of a psychological evaluation.

A letter dated June 6, 2014, from a family therapist who was treating K expressed "concerns about [K's] mother being able to manage her emotional reactivity and put [K's] needs before her own." The therapist detailed K's progress in managing his anxiety and behavior but noted the inability of mother to properly respond to K without "considerable coaching."

Another letter dated July 28, 2014, from a Court Appointed Special Advocates (CASA) volunteer, reported that "family therapy at times had been damaging, even emotionally devastating to [K] as his mother failed to react supportively as [K] suffered an emotional crisis." The CASA volunteer contended that mother's progress had been inconsistent, and sometimes "deeply upsetting" to K. The volunteer went on to suggest that communication difficulties between mother and K had resulted in K "engag[ing] in minor self-harm actions."

The juvenile court ruled, after over two years had passed, that it would change the permanency plan to APPLA, explaining that

"there comes a point in time when the court has to make a decision in the best interest of moving forward, so I will change the plan to something other than return to parent. * * * I know [K] deserves some sort of permanent plan going forward.

"It is my hope that he continues to foster his relationship with his mother, but under the circumstances in the best interest of the child I don't find that a return is reasonable within a short amount of time. Again, we've been here since April 17, 2012, that's when jurisdiction was established

"\*\*\* I find the agency has made reasonable efforts, but I think in the best interest of [K] that's the best plan to move forward."

Mother asked the court to make findings on "the progress of the parents." The court made the following additional findings:

"[M]om has made progress. More important—the most important thing is she's clean and sober. I think that rings true throughout the report. The problem is, is that she's still not, as we sit here today, in a place where [K] can safely be returned to her care due to his emotional needs, as well as her own, and so I think that's the big part of it. She is not a safe resource at this point.

"Again, the big factor in this decision it was two years plus that he has been in care, and she's still not in a place where \*\*\* he can be safe in her care. As the letter points out, she's obviously done well with her clean and sober behavior, made a lot of progress in that regard, but it's the communication skills and the emotional ups and downs of this case that is troubling to the court \*\*\*."

In its written permanency judgment, the court checked boxes indicating that DHS "**has**" made "**reasonable efforts**" and that mother "**has**" "made sufficient progress toward meeting the expectations set forth in the service agreement, letter of expectation and/or case plan, and the child **cannot be** safely returned to [her] care." (Boldface in original.) The juvenile court indicated that it relied on the DHS report and the June 6 letter for its findings.

On appeal, we understand mother's argument to be threefold. First, we understand mother to argue that the juvenile court's findings were inconsistent, requiring reversal. She contends that the court's conclusion that mother's progress was "sufficient," on the face of the judgment, precluded the court from concluding that K could not safely return home. Second, we understand mother to argue that the juvenile court impermissibly based its determination to change the permanency plan on "the best interest of the child" rather than making a sufficient progress finding. Third, we understand mother to argue that, regardless of any inconsistency, there was insufficient evidence to

support the juvenile court's determination that K could not be returned to mother within a reasonable time.

To change a child's plan from reunification with a parent, the juvenile court is required to "determine whether the Department of Human Services has made reasonable efforts * * * and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). Therefore, the proponent of the change in plan must show that "(1) DHS made reasonable efforts to make it possible for the child to return home safely *and* (2) the parent has not made sufficient progress for that to occur." *Dept. of Human Services v. R. D.*, 257 Or App 427, 432-33, 307 P3d 487 (2013) (emphasis in original). Finally, to change the permanency plan to APPLA, the court must determine a compelling reason "why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative[.]" ORS 419B.476(5)(f).

In light of those requirements, parents must be provided with "a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. S. W.*, 267 Or App 277, 286, 340 P3d 675 (2014) (internal quotation marks omitted). "[W]hether 'the types of actions [DHS] requires parents to make are reasonable depends on the particular circumstances.'" *State ex rel Dept. of Human Services v. Shugars*, 208 Or App 694, 716, 145 P3d 354 (2006) (quoting *State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 506, 130 P3d 801 (2006)). It is possible that, despite a parent's progress in meeting DHS plans and goals, it will remain unlikely that a parent will be capable of making sufficient continuing progress to allow a child to safely return home, and, consequently, a parent's progress may be legally insufficient under ORS 419B.476(2)(a). *See, e.g., Dept. of Human Services v. S. N.*, 250 Or App 708, 718, 282 P3d 901, *rev den*, 352 Or 564 (2012); *State ex rel Dept. of Human Services v. E. K.*, 230 Or App 63, 81, 214 P3d 58, *rev den*, 347 Or 348 (2009).

For example, in *S. N.*, we reviewed a father's appeal of a permanency judgment changing the permanency plan

for the father's daughter, L, from reunification to a permanent guardianship. 250 Or App at 709. In that case, L had a history of physical abuse and had been diagnosed with PTSD, among other trauma-related difficulties. *Id.* at 713. The father "completed a parenting class and faithfully attended visits with L, where, for the most part, he acted appropriately and did well with L." *Id.* at 718. Nevertheless, his progress was insufficient because the father historically had "significant poor judgment" and, as a result of untreatable mental illness, was prone to irate outbursts and occasional violent threats that would be detrimental to L. *Id.* We concluded that "[g]iven that reality, even in view of father's positive visits with L and his good performance in the parenting class, the juvenile court did not err" by determining that the father had made insufficient progress. *Id.*

As to mother's first contention, we conclude that the "sufficient progress" determination that the juvenile court made in the judgment in this case was not inconsistent with its decision to change the permanency plan from reunification. The judgment form used by the juvenile court allowed the court to check boxes indicating that a parent (1) "has made sufficient progress toward meeting the expectations set forth in the service agreement, letter of expectation and/ or case plan," and (2) the child "cannot be safely returned to [parent's] care." The statutorily required determination at issue in this case is "whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). Therefore, a court's determination that the permanency plan should be changed because a parent has not made sufficient progress to make it possible for the ward to safely return home is not necessarily inconsistent with a determination that the parent has made "sufficient progress" towards meeting expectations.[3] That result is consistent with the statutory mandate that

---

[3] Mother's confusion may stem from the judgment form's use of "sufficient progress toward meeting the expectations set forth in the service agreement, letter of expectation and/or case plan," which does not track the statutorily required determination in ORS 419B.476(2)(a) of whether the parent has made sufficient progress to make it possible for the child to return home safely. Although, as we explain, the judgment form is consistent with the change in permanency plan here, we understand how the form's use of "sufficient progress" in that context can be confusing.

the "reasonable efforts" and "sufficient progress" determinations required under ORS 419.476(2)(a) "are explicitly centered on whether the *ward* may safely return home, and that the court must make those determinations with the 'ward's health and safety the paramount concerns.'" *Dept. of Human Services v. J. B. V.*, 262 Or App 745, 755, 327 P3d 564 (2014) (quoting ORS 419B.476(2)(a)) (emphasis in original).

Here, in its oral findings, the court detailed the progress that mother had made toward DHS's expectations, as well as mother's parenting skills that remained too deficient for K's safe return. The court explained that, although mother had made progress, her progress was insufficient for K's safe return to her care "due to his emotional needs, as well as her own" and that mother's "communication skills and *** emotional ups and downs" posed a continuing concern for K's safety. Those determinations are consistent with the boxes that the court checked on the judgment form.

As to mother's second contention that the court applied the wrong standard, to the extent that the juvenile court discussed the "best interest of [K]," we do not understand the court's oral findings to indicate that the court neglected the findings required under ORS 419B.476(2)(a) concerning "reasonable efforts" and "sufficient progress." The court explicitly concluded that DHS had made reasonable efforts and that mother's progress was insufficient for K to safely return home. Considerations of the health and safety of K were necessarily integral to those findings, as well as additional determinations required to change the permanency plan to APPLA. That is, the court was required ultimately to address the best interests of the child. In this situation, the statute requires

"(5)  The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or orders the court may make under subsection (4) of this section, the order shall include:

"* * * * *

"(f)  If the court determines that the permanency plan for the ward should be a planned permanent living arrangement, the court's determination of a compelling reason, that must be documented by the department, why it would

> not be *in the best interests of the ward* to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative[.]"

ORS 419B.476(5)(f) (emphasis added). The court did not confuse the analysis. Rather, it made the initial findings then next explained why the best interests of the child required the change.

Mother's final contention challenges whether there was sufficient evidence to support the court's conclusion that K could not be returned to her care. She contends that the juvenile court erred in determining that K could not safely return to her within a reasonable period of time because, with more time, further services would help her relationship with K. *See* ORS 419B.090(5) (with some exceptions, state policy "to offer appropriate reunification services to parents and guardians to allow them the opportunity to adjust their circumstances, conduct or conditions to make it possible for the child to safely return home within a reasonable time").

At the outset, it is not clear if mother's final contention is based on ORS 419B.476(2)(a) or 419B.476(4)(c). In *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 805, 284 P3d 1233, *adh'd to as modified on recons*, 253 Or App 600, 292 P3d 565 (2012), we stated that ORS 419B.476(2)(a) does not require the juvenile court to find that a parent cannot be reunited with a child *within a reasonable time* before changing the permanency plan from reunification, and mother does not explicitly quarrel with that holding. *Cf. Dept. of Human Services v. L. A. S.*, 259 Or App 125, 129-30, 312 P3d 613 (2013) (recognizing the mother's argument that *D. L. H.* was wrongly decided, but declining to "revisit *D. L. H.* because the juvenile court in this case considered whether mother had made sufficient progress for the children to be returned within a reasonable time and determined that she had not, and the court's deterimination is supported by the record") and *Dept. of Human Services v. D. A. N.*, 258 Or App 64, 70-71, 308 P3d 303, *rev den*, 354 Or 490 (2013) (same). ORS 419B.476(4)(c) allows a court, in its discretion, to order the parent to participate in specific services "[i]f the court determines that further efforts will make it possible for the ward to safely return home within a reasonable time[.]"

Regardless of the basis of mother's argument, her argument fails. The juvenile court in this case considered whether mother had made sufficient progress for K to be returned home within a reasonable time and determined that she had not, and, as we explain below, the court's determination is supported by the record.

A basis for taking jurisdiction in this case was that mother lacked "parenting skills necessary to understand the child's behavioral needs and mental health needs." At the time of the permanency hearing, the record reveals mother's many efforts to make progress in accordance with DHS's safety plan and the court's acknowledgement of that progress. However, the record also demonstrates ongoing and unresolved emotional obstacles between mother and K as well as K's need for considerable emotional and psychological support. The record shows breakdowns in communication that contributed to K's self-harming behavior, K's mental health obstacles, and mother's difficulty in consistently accommodating his needs. In its oral findings, the court expressed concern that, after more than two years, mother still was not "a safe resource" and that K could not be "safe in her care."

Therefore, the record establishes that the court considered and rejected mother's claim that she had made sufficient progress for the K to safely return to her care, as a result of a lack of "parenting skills necessary to understand the child's behavioral needs and mental health needs" and that that determination was supported by legally sufficient evidence. Here, as in *L. A. S.*, the court could properly determine that, "although mother was making some progress, it was not reasonable to wait [longer] to change the permanency plan." 259 Or App at 130-31. That conclusion is supported by sufficient evidence in the record.

The juvenile court did not err in changing the permanency plan in this case from reunification to APPLA.

Affirmed.