Argued and submitted September 11, reversed and remanded October 21, 2015

In the Matter of Z. W.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. W.,
*Appellant.*

Douglas County Circuit Court
1300020;
Petition Number 14JU125TPR;
A158694

361 P3d 58

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Erin Galli, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum,

Attorney General, Anna M. Joyce, Solicitor General, and Inge D. Wells, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Mother appeals a judgment terminating her parental rights to her daughter, Z. The issue on appeal is whether the juvenile court erred in finding mother in default, and terminating her parental rights in her absence, based on mother's failure personally to appear in court on two occasions. For the reasons explained below, and in light of a key concession made by the Department of Human Services (DHS) on appeal, we conclude that the juvenile court erred. Accordingly, we reverse and remand for further proceedings.

The relevant facts are undisputed and entirely procedural. Mother's termination-of-parental-rights trial began on December 17, 2014. Mother appeared in person for the first two days, as she had for previous court dates in the case. On the morning of December 18, the second day of trial, mother's attorney requested a continuance "at least for the day" so that mother could seek medical attention for injuries that she had sustained in an assault by her husband and his girlfriend. Her attorney told the juvenile court, among other things, that mother had not yet gone to the hospital because "she was just concerned about if she didn't show up [in court] this morning that she would default." The juvenile court agreed to continue the trial until the afternoon to allow mother to go to the hospital.

When the parties reconvened that afternoon, mother was still at the hospital waiting to be evaluated. Her attorney asked for another continuance, informing the court that she lacked enough information about mother's medical condition to know whether it would be feasible to resume the trial the next morning. The juvenile court granted the request, stating that, "since we don't know whether or not her condition would allow her to appear tomorrow, * * * [l]et's find a date to start up again." Counsel for DHS then suggested that, "for the purposes of judicial efficiency," it might make sense to schedule the remainder of the termination trial to coincide with separate dependency proceedings involving another of mother's children, B. Mother's counsel responded that she had not had an opportunity to discuss that proposal with mother. The juvenile court then scheduled a "status check" for 11 days later, December 29,

explaining, "[s]o this is just for a quick status check, five to ten minutes, to make sure that we're all on the same page in terms of when this gets reset and whether it gets folded in with the other case." The court went on to explain, "if for some reason [m]other is unable to make it for health reasons"—which the court noted would be "the only excuse [it was] willing to accept"—it would "need [mother's] position."

Mother's DHS caseworker informed mother of the December 29 status conference. On that date, mother's attorney appeared in court, but mother did not. Her attorney informed the court that she had been unable to reach mother and that mother's phone did not always work. DHS moved for an order of default against mother. The juvenile court noted that DHS was "within its rights to ask for a default" but that there was not time to hear the department's *prima facie* case for termination that day. The court scheduled a hearing to do so for December 31, stating that, "if [mother] shows up at that hearing I guess we will figure out what happens at that point in time."

Mother's attorney appeared on December 31, but mother did not. Counsel for DHS presented the court with the order of default "that [the court] asked [him] to prepare." The court invited argument regarding that order, at which point mother's attorney reiterated that mother "did appear at the first two days of the hearing" and that she had "sustained a concussion" along with some other injuries. The juvenile court declared, "I'm finding that [mother's] non-appearance on two separate occasions indicates that she is essentially defaulting on this case at this point in time," and signed the order of default. At her request, the court then excused mother's counsel from the courtroom. The court proceeded to hear the DHS's *prima facie* case for termination of mother's parental rights and, at the conclusion of that presentation, entered a judgment terminating mother's parental rights to Z.

On appeal, in six assignments of error, mother argues that the juvenile court erred in finding mother in default because she was not required to attend the December 29 status conference. Mother argues that the juvenile court, therefore, lacked authority to proceed in mother's

absence to terminate her parental rights. She also argues that the juvenile court's decision to proceed on December 31 without mother's counsel being present deprived mother of a fundamentally fair trial, in violation of her constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. DHS counters that mother's arguments are unpreserved and that, in any case, the juvenile court did not plainly err because the applicable statute authorized the termination of mother's parental rights when she failed to appear on December 31. In response to DHS's preservation argument, mother requests that we review for plain error.

The issues on appeal concern whether the juvenile court's actions were authorized by ORS 419B.819(7), which permits the court to terminate a parent's rights if the parent fails to appear for a hearing related to a termination petition as directed by a summons or court order. That is a legal question, which we review for legal error. *See Dept. of Human Services v. M. H.*, 266 Or App 361, 364, 377 P3d 976 (2014).

ORS 419B.819(7) provides as follows:

"If a parent fails to appear for any hearing related to the [termination] petition, or fails to file a written answer, *as directed by summons or court order* under this section or ORS 419B.820, the court, without further notice and in the parent's absence, may:

"(a)  Terminate the parent's rights or, if the petition seeks to establish a permanent guardianship, grant the guardianship petition either on the date specified in the summons or order or on a future date; and

"(b)  Take any other action that is authorized by law."

(Emphasis added.)

Mother argues that the December 29 status conference was not a "hearing related to the petition" for purposes of the statute, and that, even if it was, she did not "fail[]" to appear" at that conference but, rather, appeared through her attorney.

DHS responds that the requirement to attend any "hearing related to the petition" applies to all scheduled

hearings, not just substantive ones. As to whether mother was required to attend in person or whether appearance through her attorney was acceptable, however, DHS takes the following position. A different statute, ORS 419B.819(8), provides that, "[i]f the summons requires the parent to appear personally before the court, or if a court orders the parent to appear personally at a hearing in the manner provided in ORS 419B.820, the parent may not appear through the parent's attorney." DHS argues that mother's personal appearance on December 29 *could* have been required if the court had ordered it "in the manner provided in ORS 419B.820," but DHS concedes that the court did not do so and that mother, therefore, was entitled to appear through her attorney.[1]

DHS nevertheless defends the December 31 termination judgment on two grounds. First, any error in holding mother in default on December 29 or in scheduling the continuation of the trial in mother's absence was "harmless," according to DHS, because mother's counsel did participate on December 29, and the juvenile court indicated that it would allow mother to participate if she returned on December 31. Second, regardless of what happened on December 29, DHS argues, mother is still responsible for her failure to appear on December 31—which alone justifies the termination under ORS 419B.819(7)—because mother's counsel knew of that date and her knowledge is imputed to mother.

We do not need to resolve all of the parties' arguments advancing interpretations of ORS 419B.819(7) and other statutory provisions. Under the unique circumstances of this case, which include DHS's concession that mother did not "default" by failing to appear personally on December 29, it is unnecessary to address all of those arguments in order to determine that the termination judgment must be reversed.

---

[1] ORS 419B.820 provides that one of the ways for a court to compel a parent's personal attendance is "by oral order made on the record." DHS does not argue, however, that the juvenile court's statements on the afternoon of December 18 constitute an "oral order made on the record" that required mother to personally attend the December 29 hearing. Instead, as noted, DHS concedes that mother's personal appearance on December 29 was not required.

At the December 31 hearing, the juvenile court expressly cited mother's "two" failures to appear, which included the December 29 status conference. For that reason, DHS's argument that any error in holding mother in default on December 29 was "harmless" is incorrect. It appears that mother's nonappearance on December 29 was decisive in the view of the juvenile court, which observed that DHS was "within its rights" to ask for a default, even going so far as to imply that a *prima facie* termination hearing would have been appropriate on that date if the court had had more time. In short, mother's supposed "default" on December 29 was material to the juvenile court's decision to proceed without mother. In light of DHS's concession that the juvenile court had no basis for defaulting mother on December 29, mother's failure to appear in person on that date could not provide the juvenile court with authority under ORS 419B.819(7) to proceed with termination in mother's absence.

DHS also argues that, regardless of what happened on December 29, mother's failure to appear on December 31, itself, justified the termination under ORS 419B.819(7). We disagree. There is no evidence that mother actually knew of the December 31 court date, and it is undisputed that, as with the December 29 status conference, the juvenile court did not follow the procedures under ORS 419B.819 to compel mother's personal attendance on December 31. At oral argument, DHS acknowledged an apparent inconsistency in its position that the statute *allowed* mother to appear through counsel on December 29—a hearing date of which mother had actual notice—but prohibited her from doing so on December 31—a hearing date of which mother did *not* have actual notice. We share that view and decline to interpret the statute in a fashion that would produce such an incongruous result. In other words, if mother was not in default on December 29, when she was aware of the hearing but appeared through counsel, then she was not in default on December 31, when she was unaware of the hearing but appeared through counsel. Because there was no basis for finding mother in default on either date, it follows that the juvenile court lacked authority to terminate mother's parental rights in her absence on December 31.

Having concluded that the juvenile court erred, it remains for us to decide whether that error was plain. To qualify as plain error, the error must (1) be a legal error; (2) be apparent, meaning that the legal point is obvious and not reasonably in dispute; and (3) appear on the face of the record such that we "need not go outside the record or choose between competing inferences to find it." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Even if an error is plain, we must still decide whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (factors include "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way").

Here, whether ORS 419B.819(7) authorized the juvenile court to terminate mother's parental rights in her absence, at a hearing of which she had no notice, presents a pure question of law that is not reasonably in dispute. Moreover, our conclusions do not require us to resolve any factual disputes or competing inferences. Accordingly, the error is plain; we have concluded that no default occurred, and the statute does not authorize the termination of parental rights in the parent's absence under those circumstances. We also readily conclude that the error is one that we should exercise our discretion to correct, given the magnitude of mother's interest in a fundamentally fair termination proceeding. *See State ex rel Juv. Dept. v. Geist*, 310 Or 176, 186, 796 P2d 1193 (1990) (noting that the "permanent termination of parental rights is one of the most drastic actions the state can take").

For the foregoing reasons, we reverse the judgment terminating mother's parental rights and remand to the juvenile court for further proceedings.

Reversed and remanded.