Submitted February 16, affirmed March 29, petition for review dismissed
August 14, 2017 (361 Or 804)

In the Matter of M. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

C. S.,
*Respondent,*

*v.*

M. S.,
*Appellant.*

Umatilla County Circuit Court
JV140070;
Petition Number JV140070A;
A162983

393 P3d 270

Ginger Fitch filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent DHS.

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, filed the brief for respondent C. S.

Before Ortega, Presiding Judge, and Egan, Judge, and Lagesen, Judge.

**LAGESEN, J.**

M, a two-year-old child, is a ward of the juvenile court in the custody of the Department of Human Services (DHS). On appeal from a permanency judgment that continued her permanency plan as reunification with mother, M assigns error to the juvenile court's finding that, with "further efforts," she can be returned to mother's care "within a reasonable period of time," and to its related decision not to change M's permanency plan to adoption. *See* ORS 419B.476 (regarding permanency plans for wards of the court in substitute care). On review for legal error, *Dept. of Human Services v. A. W. (A158694)*, 274 Or App 493, 497, 361 P3d 58 (2015), and evidentiary sufficiency, *Dept. of Human Services v. S. J. M.*, 283 Or App 367, 369, 388 P3d 417 (2017), we affirm.[1]

We state the facts in a manner consistent with the juvenile court's decision to continue the permanency plan of reunification. *Id.* at 369-70. M was removed from mother's care and placed in protective custody within days of her birth in October 2014. A short time later, the juvenile court took jurisdiction over M under ORS 419B.100(1)(c),[2] made her a ward of the court under ORS 419B.328,[3] and placed her in the custody of DHS, as authorized by ORS 419B.337.[4] The court did so based on its determination that mother's mental health and substance abuse issues interfered with her ability to safely parent M, and its determination that M's father was not known and, consequently, was unavailable to parent M. M has been in foster care ever since.

---

[1] No party suggests that *de novo* review is appropriate.

[2] ORS 419B.100(1)(c) authorizes juvenile court jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child] or of others."

[3] ORS 419B.328(1) states: "The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court."

[4] ORS 419B.337(1) states, in relevant part: "When the court determines it would be in the best interest and for the welfare of a ward, the court may place the ward in the legal custody of the Department of Human Services for care, placement and supervision."

As required by ORS 419B.470(2),[5] the juvenile court held a permanency hearing in October 2015. At that hearing, the court determined that M's permanency plan should be reunification with mother.

The following summer, the juvenile court held a second permanency hearing to determine whether M's permanency plan should be changed from reunification to adoption. It did so at the request of M, who was advocating the change in plan. Mother and DHS both opposed the proposed change in plan.

As of the date of that second permanency hearing, mother had made significant progress toward being able to safely parent M. She had stopped entering into abusive relationships with men, stopped abusing drugs and alcohol, and maintained steady employment. Mother also had continued her education, obtained her associate's degree, and was working toward a bachelor's degree in politics. To address her mental health issues that impair her ability to regulate her emotions, mother had completed six months of intensive Dialectical Behavior Therapy (DBT), as the court had directed her to do. The therapy helped mother improve her ability to manage her emotions and solve problems, but she needed to engage in further DBT to implement the skills that she was learning through that process. Mother had good parenting skills and the ability to meet M's needs. She loved M and regularly visited her—when allowed to do so by DHS—and acted appropriately in her interactions with M.

Mother's interactions with DHS staff were a different story. Mother resented DHS's involvement in her relationship with M and found it frustrating to parent M under the conditions set by DHS, which did not always permit mother to do simple things that she wanted to do with M, such as have a quiet breakfast with her alone. At times that frustration would cause mother's emotions to get the better of her in a manner that demonstrated that she was

---

[5] ORS 419B.470(2) provides that with the exception of certain cases, "the court shall conduct a permanency hearing no later than 12 months after the ward was found within the jurisdiction of the court under ORS 419B.100 or 14 months after the child or ward was placed in substitute care, whichever is the earlier."

not yet able to control her emotions sufficiently to safely parent M. During two of mother's supervised visits with M in the months immediately preceding the permanency hearing, police had to be called after mother became upset and refused to release M to DHS staff. One of the incidents led to her arrest for assault.

M was adversely affected by the two incidents, becoming fearful of strangers and the extended family and friends of her foster family. DHS temporarily suspended mother's visitation with M as a result of the incidents so that DHS could work out a plan to provide for therapeutic visits in the community supervised by a third party who did not work for DHS.

Because mother was not yet fully in control of her emotional condition, DHS could not safely return M to her as of the time of the hearing. However, if mother continues on her positive trajectory, M might be able to be returned to mother's care in as few as six months, although reunification might take as long as one or two years. How the waiting for reunification with mother will affect M, given M's particular characteristics, is not readily apparent from the record.

Following the permanency hearing, the juvenile court entered a permanency judgment continuing the permanency plan for M as reunification with mother. The court found that DHS had made reasonable efforts to reunify M with mother, but that, at the time of the hearing, mother had not yet made sufficient progress for M to be returned to her care. Additionally, the court found that "further efforts will make it possible for the child to be safely returned to mother's care within a reasonable time." Based on those findings, the court denied M's request to change the plan. M appeals.

On appeal, M contends that the record is legally insufficient to support the juvenile court's determination that M can be safely returned to mother within a reasonable period of time. M contends further that, given the absence of evidence that mother will be able to safely parent M within a reasonable period of time, the court erred when it did not change M's permanency plan from reunification to adoption. In other words, M's position is that, absent evidence that

would permit an affirmative finding that M can be returned to mother safely within a reasonable time, the juvenile court was required to change M's permanency plan from reunification to adoption.

In response, DHS contends that the evidence is sufficient to support the juvenile court's affirmative finding that M can be returned to mother in a reasonable period of time. It argues that we should affirm for that reason.

Mother makes a different argument. She contends that M's argument "misunderstands the proper allocation of proof" on a request to change a permanency plan, as well as what must be proved to permit a plan change from reunification to adoption. Mother asserts that it does not matter whether the evidence is sufficient to permit the finding that M *can* be returned safely to mother within a reasonable period of time because the juvenile court did not need to make that finding in order to continue M's permanency plan of reunification. Instead, under ORS 419B.476, as construed by our recent decision in *S. J. M*, to change M's permanency plan to adoption, the juvenile court had to be able to find affirmatively that there were "no compelling reasons not to file a termination petition," and, in particular, that M *could not* be returned to mother "within a reasonable time" given M's specific needs. 283 Or App at 392-93. Therefore, mother contends, even if the juvenile court erred in finding affirmatively that M could be returned to mother within a reasonable time, the juvenile court nonetheless correctly declined to change the plan because the court did not—and, on this record, could not—make the determinations that *S. J. M.* holds are required to change a permanency plan from reunification to adoption.

We agree with mother. As mother correctly points out, M—as the proponent of the change in permanency plan—bore the burden of proving that the statutory elements for a change in plan were present. *Dept. of Human Services v. R. S.*, 270 Or App 522, 527, 348 P3d 1164 (2015). Under *S. J. M.*, one of the elements that M needed to prove was that there were no compelling reasons to forego the filing of a petition to terminate mother's parental rights. 283 Or App at 392. To make that showing, M needed to prove,

among other things, that M could *not* be returned to mother within a reasonable time, given M's "particular needs and circumstances and any barriers [mother] might face." *Id.* at 394. Absent that showing, the juvenile court could not permissibly change M's permanency plan from reunification to adoption. *Id.* (finding juvenile court erred by changing permanency plan from reunification to adoption when record was legally insufficient to support the finding that child could not be returned to mother within a reasonable time).

Consequently, even if the evidence did not support the affirmative finding that M *could* be returned to mother within a reasonable time, a question that we do not decide, that does not require reversal of the juvenile court's decision to continue M's existing permanency plan. Rather, in view of *S. J. M.*, for us to reverse the juvenile court's denial of her request for a plan change, the record would have to be such that it at least permitted, if not compelled, the contrary finding that M *could not* be returned to mother within a reasonable period of time, as well as the finding that there were no other compelling reasons to forego the filing of a petition to terminate mother's parental rights. That is not the state of the record here. The juvenile court's denial of M's request for a plan change therefore was not in error.

Affirmed.